WINSTON PLAZA CURRENCY EXCHANGE, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF FINANCIAL INSTITUTIONS *et al.*, Defendants-Appellees.

First District (2nd Division) No. 1—90—0965

Opinion filed March 28, 1991.

Nisen & Elliott, of Chicago (Donald C. Shine and Stephen G. Kehoe, of counsel), for appellant.

Roland Burris, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff Winston Plaza Currency Exchange, Inc. (Winston Plaza), brought an action for equitable relief against defendants Illinois De-

partment of Financial Institutions (DFI), its Director, Shinae Chun, and the supervisor of its Currency Exchange Division, Michael Goldman (Goldman) (jointly, defendants), alleging a violation of "An Act in relation to *** Community Currency Exchanges ***" (Community Currency Exchange Act) (Ill. Rev. Stat. 1983, ch. 17, par. 4801 *et seq.*), based upon the grant of a license to a new competing currency exchange. Defendants moved to dismiss Winston Plaza's complaint on the ground that it lacked standing to challenge defendants' actions. The circuit court granted the motion and dismissed Winston Plaza's cause of action with prejudice. Plaintiff appeals from that judgment.

Winston Plaza is a licensed, operating currency exchange located at 1380 Winston Plaza Drive in Melrose Park, Illinois. On or before July 7, 1989, defendants received an application for a license to operate a new currency exchange (North Avenue Exchange) at 2316 W. North Avenue in Melrose Park, approximately six blocks from Winston Plaza's location. Upon receipt of this application, defendants issued a notice to Winston Plaza, as well as to other licensed currency exchanges in the area, advising them of the proposed license and soliciting their comments as to the need for a new exchange.

Winston Plaza's vice-president, Jeffrey Silverman, subsequently sent a letter of objection to defendants, setting forth reasons why he opposed the granting of the license. Specifically, he asserted that the approval of the North Avenue Exchange license would have a strong detrimental effect on the economic security and financial well-being of Winston Plaza. On November 1, 1989, however, Silverman received a letter from defendants stating that the license had been approved.

Between November 6 and November 9, 1989, Silverman met with, telephoned, and wrote to defendant Goldman in an attempt to persuade him to reconsider defendants' decision. On November 14, 1989, Goldman advised Silverman that the decision would stand.

On November 29, 1989, Winston Plaza filed a two-count complaint for equitable relief against defendants for granting the license, allegedly without regard to the impact of such action on Winston Plaza. In count I, plaintiff asserted its right to have the granting of the license reviewed by way of a petition for issuance of a common law writ of *certiorari*. In count II, plaintiff asserted that it had a due process right to have its evidence of harm considered before the new license was granted. Winston Plaza later added a *mandamus* count, asserting that defendants were without discretion to refuse to consider its evidence of harm.

On January 8, 1990, defendants filed a motion to dismiss Winston Plaza's complaint for failure to state a claim upon which relief could

be granted, and, specifically, for lack of standing. On March 12, 1990, after hearing arguments of counsel, the circuit court granted defendants' motion to dismiss Winston Plaza's complaint with prejudice. This appeal followed.

I

Winston Plaza initially contends that it has standing to bring a petition for common law writ of *certiorari* to challenge the licensing of the North Avenue Exchange. It alleges that the issuance of the license will diminish its financial stability. Defendants respond that Winston Plaza lacks standing to challenge their decision.

■ Section 22.01 of the Community Currency Exchange Act (the Act) (Ill. Rev. Stat. 1989, ch. 17, par. 4843 ) provides that "[a]ll final administrative decisions of the Director hereunder shall be subject to judicial review pursuant to the provisions of the Administrative Review Law."

The Act, therefore, expressly adopts the Administrative Review Law as the appropriate method for seeking review of a DFI decision. Where a statute specifically adopts the Administrative Review Law, it does so to the exclusion of all other remedies and is the sole means of review. (*City of Wood Dale v. Illinois State Labor Relations Board* (1988), 166 Ill. App. 3d 881, 520 N.E.2d 1097; *Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 367 N.E.2d 1286.) Thus, it supplants various common law methods of seeking review, such as *certiorari, mandamus,* or injunctive relief. *City of Wood Dale,* 166 Ill. App. 3d at 890.

Winston Plaza contends, however, that section 4.1 of the Act was amended to confer standing upon competitor community currency exchanges to challenge DFI's decision to issue a license to another currency exchange. Section 4.1 was amended by Public Act 83—652, effective September 23, 1983, as follows:

"4809. Public policy—Investigation to determine advisability of granting application—'Community' defined

§4.1 *The General Assembly finds and declares that community currency exchanges provide important and vital services to Illinois citizens, that the number of community currency exchanges should be limited in accordance with the needs of the communities they are to serve, and that it is in the public interest to promote and foster the community currency exchange business and to insure the financial stability thereof.* Upon receipt of an application for a license for a community currency exchange, the Director shall *cause an investigation of* the need

of the community for the establishment of a community currency exchange at the location specified in the application *and the effect that granting the license will have on the financial stability of other community currency exchanges that may be serving the community in which the business of the applicant is proposed to be conducted.*" (Emphasis added to show amendment.) Ill. Rev. Stat. 1989, ch. 17, par. 4809.

Although Winston Plaza argues that the amendatory language demonstrates the legislature's intent to confer standing upon it, we do not believe that to be the case. As defendants maintain, Winston Plaza relies on the prefatory language, which is not part of the law itself and cannot be used to create an ambiguity in the statute. *Triple A Services, Inc. v. Rice* (1989), 131 Ill. 2d 217, 545 N.E.2d 706.

Moreover, the amendatory language is clear in its purpose. It added the requirement that DFI consider what effect the issuance of a license will have on the financial stability of other community currency exchanges serving the area. The amendment, however, does not mandate how DFI must conduct its investigation, nor does it confer standing upon competitor currency exchanges to appeal the issuance of licenses. Winston Plaza's reliance on this language is therefore misplaced.

This court considered and rejected contentions similar to Winston Plaza's in *Roosevelt-Wabash Currency Exchange, Inc. v. Fornelli* (1977), 49 Ill. App. 3d 896, 364 N.E.2d 449, and in *Cottage-63rd Street Currency Exchange, Inc. v. Callahan* (1982), 104 Ill. App. 3d 586, 432 N.E.2d 1258.

In *Roosevelt-Wabash Currency Exchange, Inc.,* as in the instant case, the plaintiff was an existing licensee challenging the licensing of another currency exchange in the area. The defendant, Anthony Fornelli, Director of the Illinois Department of Financial Institutions, filed a motion to dismiss the plaintiff's complaint for lack of standing. The circuit court granted the motion and the plaintiff appealed.

The appellate court affirmed the circuit court's order, finding that "[a]s a competitor, plaintiff has no direct interest in the matter which would give rise to a specific right to be heard." (*Roosevelt-Wabash Currency Exchange, Inc.,* 49 Ill. App. 3d at 899.) The court also found that the plaintiff had no standing to maintain an action for administrative review, as that remedy is limited to parties of record to the original proceeding before the agency. *Roosevelt-Wabash Currency Exchange, Inc.,* 49 Ill. App. 3d at 901.

In *Cottage-63rd Street Currency Exchange, Inc.*, this court analyzed the provision of section 4.3 of the Act which governs the issuance of licenses to ambulatory currency exchanges. That provision contains the same language which is at issue in the instant case and which requires DFI to consider the effect that granting a license will have on the financial stability of other community currency exchanges. Ill. Rev. Stat. 1981, ch. 17, par. 4811.

The court initially recognized that "the primary purpose of the currency exchange act has been held to be the protection of consumers served by currency exchanges." (*Cottage-63rd Street Currency Exchange, Inc.*, 104 Ill. App. 3d at 590, citing *First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 388 N.E.2d 17.) The court rejected the plaintiff's argument that the amendatory language of section 4.3 showed a clear legislative intent to protect the interests of community currency exchanges by bringing them within the class protected by the statute. In so doing, the court held that section 4.3 did not elevate the community currency exchange to the status of the consumer whom the act was originally designed to protect. *Cottage-63rd Street Currency Exchange, Inc.*, 104 Ill. App. 3d at 591.

*Cottage-63rd Street Currency Exchange, Inc.* is wholly applicable to the instant case. Winston Plaza makes the same argument here that was made and rejected in that case. The language at issue in both cases is practically identical. Although Winston Plaza attempts to distinguish *Cottage-63rd Street Currency Exchange, Inc.* because the plaintiff there sought a declaratory judgment rather than a writ of *certiorari*, such a distinction is neither relevant nor significant.

Winston Plaza's reliance on *Odell v. Village of Hoffman Estates* (1982), 110 Ill. App. 3d 974, 443 N.E.2d 247, and *Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 367 N.E.2d 1286, is misplaced. Both cases involved the real parties in interest and agencies which had not adopted the Administrative Review Law as the exclusive means of judicial review.

In summary, we conclude that Winston Plaza lacks standing to bring a petition for writ of *certiorari* for several reasons. First, the Act has adopted the Administrative Review Law as the means of review, thus excluding common law remedies such as writs of *certiorari*. Second, the amendatory language of section 4.1 does not bring Winston Plaza within the class of consumers whom the Act was intended to protect. Finally, the case law cited by Winston Plaza is not persuasive because Winston Plaza is not a party in interest.

## II

Winston Plaza's second contention is that it has standing to seek a writ of *mandamus* against defendants to require them to consider all evidence of harm to its financial stability before the issuance of a new license to the North Avenue Exchange. Specifically, Winston Plaza argues that defendants, in deciding whether to grant the new license, did not consider documented objection material which it submitted to them. Defendants respond that Winston Plaza lacks standing to seek a writ of *mandamus* against them and that the circuit court properly dismissed with prejudice the *mandamus* count.

██ *Mandamus* is an extraordinary remedy, rather than a remedy of right, and the party seeking the writ must show a clear legal right to the relief requested. (*Machinis v. Board of Election Commissioners* (1987), 164 Ill. App. 3d 763, 767, 518 N.E.2d 270, citing *Kramer v. City of Chicago* (1978), 58 Ill. App. 3d 592, 598, 374 N.E.2d 932.) *Mandamus* is used to direct a public official or body to perform a ministerial duty, one which does not involve the exercise of judgment or discretion. (*Crump v. Illinois Prisoner Review Board* (1989), 181 Ill. App. 3d 58, 536 N.E.2d 875, *appeal denied* (1989), 127 Ill. 2d 613, 545 N.E.2d 107.) It cannot be used to direct a public official or body to reach a particular decision or to exercise its discretion in a particular manner, even if the judgment or discretion has been erroneously exercised. *Crump*, 181 Ill. App. 3d at 60, quoting *Daley v. Hett* (1986), 113 Ill. 2d 75, 80, 495 N.E.2d 513, and *Pardo v. Chrans* (1988), 174 Ill. App. 3d 549, 554, 528 N.E.2d 1071.

██ Winston Plaza interprets the amendatory language of section 4.1 of the Act as creating a ministerial duty on defendants' part; however, the amended language simply does not support that interpretation. Section 4.1, as amended, requires DFI to cause an investigation of "the effect that granting the license will have on the financial stability of other community currency exchanges that may be serving the community." (Ill. Rev. Stat. 1989, ch. 17, par. 4809.) The amendment does not specify the manner in which DFI must conduct its investigation. Nor does it require DFI to consider any submissions by the affected currency exchanges.

Defendants correctly assert that the facts alleged in Winston Plaza's complaint demonstrate that defendants considered Winston Plaza's objections; met with Winston Plaza to discuss the objections; agreed to reconsider the original decision; accepted additional information submitted by Winston Plaza; and, after reviewing the record, informed Winston Plaza that a license would nevertheless be issued.

Defendants were not required by law to take any of these actions. Thus, because there was no affirmative duty on defendants, Winston Plaza's claim that it is entitled to a writ of *mandamus* is unavailing. Winston Plaza is not entitled to *mandamus* merely because it does not agree with defendants' decision.

In this case, it is clear that Winston Plaza was given an opportunity to be heard when defendants solicited comments prior to the issuance of the license to the North Avenue Exchange. Winston Plaza's argument that defendants did not consider the subsequently submitted additional information is therefore of no relevance.

## III

Winston Plaza's final argument is that it has standing under procedural due process principles to challenge the licensing of the North Avenue Exchange. Specifically, Winston Plaza argues that it was entitled to a hearing to protect its license because of defendants' own policies. Defendants respond that Winston Plaza does not have standing to challenge the new license under due process principles.

■ As previously indicated, this court held in *Roosevelt-Wabash Currency Exchange, Inc.* that "[a]s a competitor, plaintiff has no direct interest in the matter which would give rise to a specific right to be heard." (*Roosevelt-Wabash Currency Exchange, Inc.*, 49 Ill. App. 3d at 899, citing *American Surety Co. v. Jones* (1943), 384 Ill. 222, 51 N.E.2d 122.) Moreover, the Illinois Supreme Court has held that not every individual who may be adversely affected by a regulation under consideration is entitled to prior notice and a due process hearing. *Triple A Services, Inc. v. Rice* (1989), 131 Ill. 2d 217, 545 N.E.2d 706, 714.

The primary purpose of the Act is to protect the consumers served by currency exchanges. (*Cottage-63rd Street Currency Exchange, Inc.*, 104 Ill. App. 3d at 590.) The amendatory language of the Act does not alter that purpose. Although the amendment requires DFI to conduct an investigation prior to the issuance of a new license, this requirement does not confer upon Winston Plaza any protectable property interest in the new license. The actions taken by defendants were not directed at Winston Plaza's own license; thus, Winston Plaza's claim of a due process violation is unavailing.

The cases relied upon by Winston Plaza are distinguishable in that each one involved adverse action against the actual party in interest. *Board of Education v. State Board of Education* (1986), 113 Ill. 2d 173, 497 N.E.2d 984 (plaintiff's job at issue); *Interstate Material Corp. v. City of Chicago* (1986), 150 Ill. App. 3d 944, 501 N.E.2d 910

(plaintiff's certification at issue); *Reed v. Village of Shorewood* (7th Cir. 1983), 704 F.2d 943 (plaintiff's license at issue).

Based on the foregoing, we conclude that the circuit court properly dismissed Winston Plaza's complaint with prejudice.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.