HYDE PARK MEDICAL LABORATORY, INC., Plaintiff-Appellant, v. THE COURT OF CLAIMS *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—91—3886

Opinion filed March 31, 1994.—Rehearing denied June 14, 1994.

890

Scariano, Kula, Ellch & Himes, Chartered, of Chicago (Lawrence J. Weiner, of counsel), for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and James C. Stevens and Deborah L. Ahlstrand, Assistant Attorneys General, of counsel), for appellees.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, Hyde Park Medical Laboratory, appeals from the circuit court's order dismissing its complaint against the Court of Claims, the Department of Public Aid, and Philip Bradley in his official capacity as Director of the Department of Public Aid for lack of jurisdiction. The following issues are raised on appeal: (1) whether the circuit court properly held that it was without jurisdiction to entertain an action for declaratory judgment; (2) whether the circuit court abused its discretion in refusing to issue a writ of *mandamus*; and (3) whether the circuit court abused its discretion in refusing to grant a writ of *certiorari*.

We affirm.

BACKGROUND

Plaintiff rendered services to the Department of Public Aid ·(Department) from December 31, 1969, through May 31,.1971. In July of 1971, the Department notified plaintiff that its unpaid invoices were being held pending investigation. Thereafter, the Department refused to pay the invoices. In 1972, plaintiff instituted an action in the Court of Claims against the State of Illinois seeking $340,681.

The action was delayed due to removal (and reinstatement) of plaintiff's original counsel, actions brought in the District Court for the Northern District of Illinois, recusal of Court of Claims commissioners on allegations of bias, failure of defendants to produce documents, and plaintiff's motions for general continuance status. The case was on general continuance status from March of 1973 until October of 1975, from January of 1977 until June of 1978 and from May of 1979 until January of 1983.

The Court of Claims conducted a series of hearings in 1976 before a commissioner. No further hearings were held until 1987. On May 11, 1987, the commissioner was instructed to submit his report, and on August 22, 1988, the Court of Claims issued a decision.

In its decision, the Court of Claims noted that the transcripts of proceedings revealed little evidence, and much argument, bickering and allegations of wrongdoing between the parties. Although the State asserted during the hearings that the claim should have been barred because of fraud on the part of plaintiff, the Court of Claims found this allegation to be wholly unsupported by the record. Instead, the Court of Claims found that the record demonstrated by a preponderance of the evidence that plaintiff was entitled to $340,681.

Plaintiff subsequently filed a motion for rehearing, reconsideration and modification seeking an award of pre-award interest and attorney fees. The Court of Claims denied the motion.

On March 28, 1989, plaintiff filed a second complaint in the Court of Claims which alleged a separate and distinct claim for the interest due and owing pursuant to statute, citing the State Prompt Payment Act (Ill. Rev. Stat. 1987, ch. 127, par. 132.401 *et seq.* (now codified, as amended, at 30 ILCS 540/1 *et seq.* (West 1992))), as well as article I, sections 2, 12, and/or 15, of the constitution of the State of Illinois and the fourteenth amendment to the constitution of the United States. On December 7, 1990, the Court of Claims issued an opinion dismissing plaintiff's second complaint. The Court of Claims held that the State Prompt Payment Act did not apply to plaintiff's claims for the following reasons:

"Ill. Rev. Stat. 1987, ch. 127, par. 132.403—1, relied upon by Claimant provides:

'In any instance where a State official or agency is late in payment of a vendor's bill or invoice *properly approved* in accordance with this Act *** the State official or agency shall pay the interest penalty ***.'

While Claimant asserts that 'evidence has and will show that all invoices were approved for payment' any such 'approval' of invoices for services rendered in 1969-1971 had been rescinded *prior* to the filing of the original claim in 1972. We note that the enactment of the Prompt Payment Act was in 1975, effective July 1, 1976. Nothing in the legislative debates, supplied by Claimant indicates an intent to provide interest on invoices that were not 'approved' at the time of the passage of the legislation. Accordingly, even if the Claimant's invoices were subject to the legislation, it would not be entitled to interest since they were not approved." (Emphasis added.)

Plaintiff filed a motion for rehearing, reconsideration, modification, grant of summary judgment and entry of award prayed for in the complaint, requesting, *inter alia*, an evidentiary hearing with respect to certain findings upon which the Court of Claims based its December 7, 1990, opinion. The Court of Claims denied this motion.

On March 13, 1991, plaintiff filed a complaint in the circuit court against the Court of Claims, the Illinois Department of Public Aid, and Philip Bradley, as Director of the Illinois Department of Public Aid, seeking a declaratory judgment, and the issuance of a writ of *mandamus* and/or *certiorari* to compel defendants to fulfill their statutory and/or constitutional duties to plaintiff under the State Prompt Payment Act, as well as the Illinois and United States Constitutions. On May 6, 1991, defendants moved to dismiss, asserting that the action was barred by sovereign immunity; that the

Court of Claims, the proper forum, had denied pre-award interest which decision was *res judicata* to the instant claim; and that plaintiff had no clear right to compel a decision in plaintiff's favor.

On September 9, 1991, after reviewing the pleadings and hearing argument, the circuit court granted defendants' motion to dismiss. The court held that plaintiff had been granted a full hearing in the Court of Claims and that the circuit court had no power or authority to review a decision of the Court of Claims regarding the award of interest on a judgment in favor of plaintiff. Plaintiff filed a motion for reconsideration which the circuit court denied. This appeal followed.

OPINION

■ Plaintiff sought to have the circuit court issue a declaratory judgment stating that under the State Prompt Payment Act, plaintiff was entitled to an award of interest on the judgment it obtained in the Court of Claims. However, the Court of Claims had already decided this issue against plaintiff. Moreover, the Court of Claims was the only forum which had jurisdiction to decide such a claim. The State Lawsuit Immunity Act provides in relevant part:

"§ 1. Except as provided in the 'Illinois Public Labor Relations Act' *** or except as provided in 'AN ACT to create the Court of Claims', *** the State of Illinois shall not be made a defendant or party in any court." (745 ILCS 5/1 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 127, par. 801).)

The Court of Claims Act provides in pertinent part:

"§ 8. The court shall have exclusive jurisdiction to hear and determine the following matters:

(a) All claims against the state founded upon any law of the State of Illinois *** other than claims arising under the Workers' Compensation Act or the Workers' Occupational Diseases Act, or claims for expenses in civil litigation." 705 ILCS 505/8 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 37, par. 439.8).

The law is clear. "All claims against the state founded upon any law of the State of Illinois" are within the exclusive jurisdiction of the Court of Claims. (705 ILCS 505/8 (West 1992); see *Ellis v. Board of Governors* (1984), 102 Ill. 2d 387.) Plaintiff is seeking a monetary award from the Department of Public Aid under the State Prompt Payment Act. The Department of Public Aid is an arm of the State and the State Prompt Payment Act is a law of the State of Illinois. Clearly, the circuit court had no jurisdiction to make an independent determination of the parties' rights under the State Prompt Payment Act.

■ Plaintiff next contends that its claim fits within an exception to the doctrine of sovereign immunity. Plaintiff points out that sovereign immunity affords no protection when it is alleged that the State's agents acted in violation of statutory or constitutional law or in excess of their authority. (See *Healy v. Vaupel* (1990), 133 Ill. 2d 295, 308.) Plaintiff sought to have the circuit court issue a writ of *mandamus* to compel members of the Court of Claims and the Director of the Department of Public Aid to "abide by their statutory duties." Plaintiff suggests that it is the Court of Claims' duty to order the Director to pay plaintiff interest and it is the Director's duty to pay the interest.

*Mandamus* is an extraordinary remedy which is only appropriate where the party seeking the writ demonstrates a clear legal right to the requested relief. (See *League of Women Voters v. County of Peoria* (1987), 121 Ill. 2d 236, 243; *Winston Plaza Currency Exchange, Inc. v. Department of Financial Institutions* (1991), 211 Ill. App. 3d 1062, 1068.) *Mandamus* is used to direct a public official or body to perform a ministerial duty, one which does not involve the exercise of judgment or discretion. (*Winston*, 211 Ill. App. 3d at 1068.) It cannot be used to direct a public official or body to reach a particular decision or to exercise its discretion in a particular manner, even if the judgment or discretion has been erroneously exercised. *City of Highwood v. Obenberger* (1992), 238 Ill. App. 3d 1066; *Winston*, 211 Ill. App. 3d at 1068.

In the instant case, plaintiff has failed to show a clear right to relief. In its brief, plaintiff contends that it "is entitled to interest and/or interest penalty pursuant to and in accordance with one or more of the following statutory provisions: (1) Ill. Rev. Stat. 1988, ch. 127, pars. 132.401 through 132.403—1; (2) Ill. Rev. Stat. 1976, ch. 127, pars. 132.401 through 132.403l; and (3) Ill. Rev. Stat. 1977, ch. 23, par. 12—4.25(F)." Each of these statutes was enacted prior to the accrual of plaintiff's cause of action and the filing of its claim; plaintiff cites no authority rendering these statutes retroactive. It was within the province of the Court of Claims to determine whether the above statutes were applicable to plaintiff's claim. The Court of Claims determined that even if plaintiff's invoices were subject to the legislation, plaintiff would not be entitled to interest since the invoices were not properly approved at the time of the passage of the legislation. As we discussed above, the circuit court was without authority to make an independent determination of the parties' rights. Because plaintiff failed to demonstrate a clear right to relief, the circuit court did not abuse its discretion by refusing to issue a writ of *mandamus* to either the members of the Court of Claims or the Director of the Department of Public Aid.

■ Finally, plaintiff sought to have the circuit court issue a writ of *certiorari* to review the Court of Claims' decision and/or order the Court of Claims to hold an additional evidentiary hearing. A common law writ of *certiorari* may be available to review the actions of an inferior tribunal when no other mode of appeal or review is provided. (*Rossetti Contracting Co. v. Court of Claims* (1985), 109 Ill. 2d 72, 79.) However, there is no absolute right to review by *certiorari*; issuance of a writ of *certiorari* lies within the sound discretion of the court. (*Stratton v. Wenona Community Unit District No. 1* (1990), 133 Ill. 2d 413, 428.) Plaintiff relies on *Rossetti* (109 Ill. 2d 72) to support his position.

In *Rossetti*, a decision expressly limited to its facts, our supreme court held that a writ of *certiorari* was the appropriate means to review a decision by the Court of Claims. (*Rossetti*, 109 Ill. 2d at 79.) Rossetti was a subcontractor to a general contractor who had entered into an agreement with the Illinois Department of Transportation. A dispute arose, and the general contractor brought suit in the Court of Claims for money due under the contract, including money owed to the subcontractor. As an affirmative defense, the Department of Transportation asserted that the general contractor had engaged in fraud against the State. The subcontractor then sought to intervene in the suit, arguing that there was no evidence of fraud on his part. The Court of Claims denied the subcontractor's petition without stating reasons. Subsequently, the Court of Claims granted summary judgment in favor of the Department of Transportation and dismissed the general contractor's claim in its entirety.

The subcontractor then sought relief in the circuit court by filing a petition for writ of *certiorari*. The circuit court stated that a manifest injustice had been worked upon the subcontractor and that he should have a right to appear in a forum and present his claim against the State of Illinois. However, the circuit court concluded that it was without jurisdiction over the matter and denied the claim on that basis. *Rossetti*, 109 Ill. 2d at 76.

The supreme court concluded that a writ of *certiorari* was the appropriate means to review the Court of Claims' decision. The supreme court observed that the subcontractor was not presently seeking money damages against the State, but only the right to be heard on his claim. The supreme court noted that it had the authority and the responsibility, as the final arbiter of the Constitution, to determine whether the Court of Claims had acted in a manner which unconstitutionally deprived a party of its right to due process. The supreme court then concluded that the subcontractor had been denied his due process rights and remanded the case to the Court of Claims. *Rossetti*, 109 Ill. 2d at 78-79.

In holding that *certiorari* was appropriate in *Rossetti*, the supreme court expressly limited its decision to the narrow facts before it:

"In deciding that *certiorari* was appropriate under the rare set of circumstances in the instant case, we do not now hold that *certiorari* would be available to review the correctness of any decision of the Court of Claims based on the merits of an appeal." *Rossetti*, 109 Ill. 2d at 79-80.

Unlike the subcontractor in *Rossetti*, plaintiff was not deprived of the opportunity to be heard. We decline to extend the scope of review permitted in *Rossetti* to the merits of decisions from the Court of Claims. In enacting the Court of Claims Act, the legislature created an exception to the doctrine of sovereign immunity by allowing parties to bring monetary claims against the State in the Court of Claims. (See 705 ILCS 505/1 *et seq.* (West 1992).) It is within the legislature's prerogative to determine the condition upon which suits against the State may be brought. The legislature has determined that the Court of Claims has exclusive subject matter jurisdiction over monetary claims against the State. Accordingly, the circuit court was without authority to review the merits of the Court of Claims' decision.

■ Plaintiff further alleges that it was denied due process when the Court of Claims rejected its request for an evidentiary hearing regarding the Court of Claims' finding that plaintiff's invoices were not properly approved. Plaintiff asserts that, under *Rossetti*, it is entitled to an additional evidentiary hearing. Plaintiff's reliance on *Rossetti* is misplaced.

In *Rossetti*, the plaintiff was never afforded any opportunity to be heard; Rossetti was never permitted to become a party to the suit which deprived him of his rights under a contract with the State. Here, plaintiff was afforded a hearing on the issue of whether interest should be awarded on plaintiff's judgment. The Court of Claims heard arguments and allowed the parties to file supplemental briefs. The court then determined:

"While Claimant asserts that 'evidence has and will show that all invoices were approved for payment,' any such 'approval' of invoices for services rendered in 1969-1971 had been rescinded *prior* to the filing of the original claim in 1972. We note that the enactment of the Prompt Payment Act was in 1975, effective July 1, 1976. Nothing in the legislative debates, supplied by Claimant indicates an intent to provide interest on invoices that were not 'approved' at the time of the passage of the legislation. Accordingly, even if the Claimant's invoices were subject to the

legislation, it would not be entitled to interest since they were not approved."

Plaintiff contends that it should have been granted an additional hearing specifically on the issue of whether its invoices were "approved." Plaintiff argues that it should have had the opportunity to prove that the invoices were approved. We find no due process violation in the Court of Claims' refusal to grant an additional hearing. It is clear from the Court of Claims' opinion that it considered the very issue on which plaintiff seeks to be heard; the court determined from the evidence before it that approval was lacking and no additional evidence from plaintiff could prove otherwise. Accordingly, the circuit court did not abuse its discretion in failing to order the Court of Claims to provide an additional hearing.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

MURRAY, P.J., and McNULTY, J., concur.